IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal Action No. RDB-07-604 |
| JONATHAN CORNISH, | * | |
| *Defendant.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM ORDER

On December 20, 2007, Defendant Jonathan Cornish ("Cornish" or "Defendant") pled guilty to one count of using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). (ECF No. 10.) Specifically, he pled guilty to the murder of Carl Lackl for purpose of his entry to the "Bloods" street gang. (ECF No. 42.) On August 14, 2009, this Court sentenced Cornish to a term of 480 months (40 years) of imprisonment, followed by a five-year term of supervised release. (*Id.*)

Now pending before this Court[1] is Cornish's *pro se* Motion for Compassionate Release under the First Step Act pursuant to 18 U.S.C. § 3582(c)(1)(A) (the "Motion for Compassionate Release" or "Motion"). (ECF No. 72.) In his motion, Cornish asserts that he has an underlying medical condition that makes him more susceptible to complications from COVID-19, which presents an extraordinary and compelling reason to grant him compassionate release. (*Id.*) The Government has not filed a response to Cornish's motion,

---

[1] Also pending on this Court's docket are three motions filed subsequent to Petitioner's Motion for Compassionate Release (ECF Nos. 77, 78, 87): (1) a motion docketed September 15, 2022, captioned "F.R.C.P. Rule 53 Masters (b) Order Appointing a Master" (ECF No. 77); (2) a motion docketed October 5, 2022, requesting assignment of a United States Magistrate Judge (ECF No.78); and (3) a Motion to Proceed in Forma Pauperis (ECF No. 87) docketed March 31, 2023. Because Cornish's Motion for Compassionate Release (ECF No. 72) is **DENIED**, the motions filed at ECF Nos. 77, 78, 87 are **DENIED AS MOOT**.

nor is it necessary. Local Rule 105.6 (D. Md. 2023). For the reasons stated herein, Cornish's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECF No. 72) is **DENIED** based on Cornish's failure to demonstrate an extraordinary and compelling circumstance that warrants compassionate release.

## BACKGROUND

The parties stipulated to the underlying facts in Cornish's Plea Agreement. (*See* Presentence Investigation Report at 3.) On July 2, 2007, Carl Lackl was subpoenaed to appear as a witness in the then-pending trial of Patrick Byers ("Byers"). (*Id.*) Byers was charged with first-degree murder after Carl Lackl identified Byers as the person he saw throw a gun away as Byers ran away from the scene of a murder on March 6, 2006. (*Id.*)

At the time, Cornish was a member of the street gang, the "Bloods." (*Id.* at 4.) On July 2, 2007, Marcus Pearson ("Pearson"), a higher-ranking Bloods member, contacted Cornish to recruit him to help murder Carl Lackl in order to prevent his testimony against Byers. (*Id.*) Cornish agreed to help Pearson commit the murder, and Pearson arranged to pick Cornish up that afternoon. (*Id.*) Pearson, Cornish, and other Bloods members drove to Carl Lackl's residence, and to lure Carl Lackl outside of his home, the conspirators called inquiring about a car Carl Lackl had offered for sale, indicating they were coming to look at a car he was selling and asking him to wait outside for their arrival. (*Id.* at 5.) Upon their arrival, Carl Lackl approached the passenger side of the car where Cornish was sitting, and Cornish shot Carl Lackl three times at close range. (*Id.*) A few minutes later, Cornish called Pearson, who was riding in a different car, to confirm that the murder "was done." (*Id.*)

On July 12, 2007, Cornish was arrested by Baltimore County Police and charged with the murder of Carl Lackl. (*Id.* at 1.) On December 20, 2007, Cornish appeared in this Court and pled guilty to one count of using and carrying a firearm during and in relation to a crime of violence. (*Id.* at 3.) On August 14, 2009, he was sentenced to 480 months (40 years) of imprisonment followed by a five-year term of supervised release. (ECF No. 10.) Cornish is currently incarcerated at FCI Butner Medium I with a projected release date of June 26, 2042. *See Find an Inmate,* FEDERAL BUREAU OF PRISONS, http://www.bop.gov/inmateloc/ (search "43249-037") (last accessed Jan. 31, 2024).

On July 15, 2022, Cornish filed a *pro se* Motion for Compassionate Release under the First Step Act pursuant to 18 U.S.C. § 3582(c)(1)(A), seeking compassionate release due to the COVID-19 pandemic. (ECF No. 72.)

## ANALYSIS

As Cornish filed his motion *pro se*, his arguments are afforded a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (holding that pro se filings are "held to less stringent standards than formal pleadings drafted by lawyers" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1975))); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

The First Step Act of 2018, Pub. L. No. 115–391, 132 Stat. 5194, established significant changes to the procedures involving compassionate release from federal prison. Prior to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i) provided the Bureau of Prisons ("BOP") with sole discretion to file compassionate release motions with the Court. With the passage of the First Step Act, defendants are now permitted to petition federal courts directly for compassionate release whenever "extraordinary and compelling reasons" warrant

3

a reduction in sentence. The Act permits a defendant to seek a sentence reduction after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Once these mandatory conditions are satisfied, this Court may authorize compassionate release upon a showing of "extraordinary and compelling reasons" warranting a reduction and after weighing the factors presented in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A)(i).

### I.  Cornish Satisfies the Administrative Exhaustion Requirement.

Cornish has demonstrated that he exhausted the administrative remedies prescribed in § 3582(c)(1)(A). One of the mandatory conditions laid out in § 3582(c)(1)(A) requires a petitioner to demonstrate that "[he] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Cornish filed correspondence with this Court indicating that on September 30, 2021, he filed a request with his Warden to file a motion requesting a sentence consideration on Cornish's behalf in accordance with § 3582(c)(1)(A). (ECF No. 77-5.) Cornish subsequently filed the motion that is the subject of this order with this Court on July 17, 2022.[2] Since Cornish filed a request with his warden

---

[2] On September 13, 2022, the Office of the Federal Public Defender declined compassionate release representation, noting that they had not received additional documents from Cornish regarding the exhaustion of administrative remedies. (ECF No. 76.) While not addressed in his original motion (ECF No. 72), Cornish filed a "Request to Warden for Compassionate Release and Release plan" on September 30, 2021. (ECF No. 77-5.)

4

and 30 days had lapsed before he filed his *pro se* motion with this Court, Cornish has exhausted his administrative remedies prescribed in § 3582(c)(1)(A).

**II.     Cornish Fails to Raise Extraordinary and Compelling Circumstances to Justify Compassionate Release.**

Nevertheless, Cornish has not presented extraordinary and compelling reasons to support his compassionate release.[3] The United States Sentencing Commission (the "Commission") is charged with defining "what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582(c)(1)(A). 28 U.S.C. § 994(t). Of relevance here, the Commission has determined that "extraordinary and compelling reasons" exist where a defendant is "suffering from a serious physical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). Similarly, a defendant who is "(i) at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less," faces extraordinary and compelling circumstances that may justify release. U.S.S.G. § 1B1.13 cmt. n.1(B). Finally, the Commission has authorized the Bureau of Prisons to identify other extraordinary and compelling reasons "other than, or in combination with" the reasons identified by the Commission. U.S.S.G. § 1B1.13 cmt. n.1(D).

---

[3] Cornish also attempts to challenge his conviction through this motion for compassionate release. This argument is unavailing as this motion is not the proper venue. *See United States v. Ferguson*, 55 F.4th 262, 272 (4th Cir. 2022) (holding that "a compassionate release motion cannot be used to challenge the validity of a Defendant's conviction or sentence"). The Fourth Circuit further held that Section 2255 remains "the exclusive method" for such challenges, and a defendant may not "sidestep § 2255's requirements" through a motion for compassionate release. *Id.* At 270 (citing 28 U.S.C. § 2255). Cornish's previous motion to vacate his sentence under 28 U.S.C. § 2255 was denied by this Court (ECF No. 43), and his appeal was dismissed by the Fourth Circuit. (ECF No. 48.)

Although potentially useful guides, neither the Sentencing Commission's guidelines nor the Bureau of Prisons' regulations constrain this Court's analysis. *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020) (holding that U.S.S.G. § 1B1.13 is not an "applicable policy statement" for compassionate release motions filed by a defendant in the wake of the First Step Act). As Judge Blake of this Court has recognized, the First Step Act embodies Congress's intent to reduce the Bureau of Prisons' authority over compassionate release petitions and authorizes the district courts to exercise their "independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence." *United States v. Bryant*, No. CCB-95-0202, 2020 WL 2085471, at *2 (D. Md. Apr. 30, 2020); *accord McCoy*, 981 F.3d at 281 (holding that "the First Step Act allows courts independently to determine what reasons, for purposes of compassionate release, are 'extraordinary and compelling'").

Exercising its discretion under the First Step Act, this Court has determined that a defendant's heightened susceptibility to COVID-19 may constitute an extraordinary and compelling reason for a sentence reduction. *See, e.g.*, *United States v. Hurtt*, No. JKB-14-0479, 2020 WL 3639987, at *1 (D. Md. July 6, 2020). However, "the coronavirus is 'not tantamount to a get out of jail free card.'" *United States v. Hiller*, No. ELH-18-0389, 2020 WL 2041673, at *4 (D. Md. Apr. 28, 2020) (quoting *United States v. Williams*, No. PWG-13-544, 2020 WL 1434130, at *3 (D. Md. Mar. 24, 2020)). Accordingly, for COVID-19 to constitute an "extraordinary and compelling" circumstance in a given case, the defendant must allege that they have a "particularized susceptibility" to COVID-19. *See, e.g.*, *United States v. Petway*, No. 21-6488, 2022 WL 168577, at *2 (4th Cir. Jan. 19, 2022).

Here, Cornish fails to demonstrate that he has a "particularized susceptibility" to COVID-19 that justifies his compassionate release. In his motion, Cornish alleges that he is especially vulnerable to COVID-19 because he has been diagnosed with having a "carotid sinus" that he further details can be triggered by the virus. (ECF No. 72.) Cornish has not provided this Court with any medical documentation of his diagnosis or his susceptibility to the illness. (*Id.*) Absent any medical documentation or recommendations from a health professional, Cornish fails to prove that he has a "particularized susceptibility" to illness that justifies compassionate release.

In his Motion, Cornish also suggests that he is unvaccinated. (*Id.* at 5 ("[V]accination is not an option. Any form of respiratory tract infection in the form of vaccination would be harmful to my deterioration.").) If Cornish is unvaccinated, this further undermines his contention, broadly construed, that the COVID-19 pandemic creates an extraordinary and compelling reason for his release. Absent a documented medical reason, an individual's refusal to receive a COVID-19 vaccine does not constitute an extraordinary and compelling reason for compassionate release. *See United States v. Harris*, No. RDB-16-364, 2022 WL 1062029, at *4 (D. Md. Apr. 8, 2022) (citing cases); *see also United States v. Bowling*, No. CCB-16-267, 2021 WL 5845150, at *2 (D. Md. Dec. 8, 2021) (a "refusal to be vaccinated, in the absence of a documented medical reason, undercuts a claim of extraordinary and compelling reasons for compassionate release."). As Judge Gallagher of this Court has aptly noted, "[c]ourts now widely recognize that a refusal to take preventative measures to protect oneself from COVID-19 undermines any assertion that the risk of viral infection constitutes an extraordinary and compelling reason justifying release." *United States v. Smith*, No. SAG-

20-47, 2021 WL 1733457, at *2 (D. Md. May 3, 2021). As noted *supra*, Cornish suggests in his motion that he is not vaccinated because it would be harmful to his health, but he offers no documented medical basis for his refusal to be vaccinated. (ECF. No. 72 at 5.) As such, Cornish fails to demonstrate his "particularized susceptibility" to COVID-19, and this Court finds that compassionate release is unavailable on these grounds.

Cornish further cites three cases from the United States District Court for the Southern District of New York that he uses to suggest that his youth at the time he committed the murder, and his unfortunate upbringing are extraordinary and compelling circumstances that warrant a sentence reduction. This assertion is also unavailing. Each of the cases he cites can be easily distinguished. *See United States v. Ramsay*, 538 F. Supp. 3d 407, 426 (S.D.N.Y. 2021) (finding that a petitioner's "youth at the time of the offense, his upbringing, and his demonstrated rehabilitation, taken together, are extraordinary circumstances that compel a sentence reduction"); *United States v. Glynn*, No. 06-cr-580, 2022 WL 562652, at *6 (S.D.N.Y. 2022) (holding that petitioner's youth at the time the crime was committed combined with his recently-diagnosed chronic kidney disease and his apparent rehabilitation is an extraordinary and compelling circumstance); *United States v. Ramirez*, 571 F. Supp. 3d 40, 52 (S.D.N.Y. 2021).

In *Ramirez*, the court reduced a petitioner's sentence from 48 years to 40 years relying heavily on the premise that the original sentencing judge was bound by mandatory sentencing guidelines at the time but had expressed a belief that the sentence should be lower based on petitioner's youth, upbringing, and rehabilitation while incarcerated. 571 F. Supp. 3d at 52. Ramirez was 23 years into his sentence of 48 years for his role as a leader in a

criminal organization that distributed drugs and committed several violent acts, including being involved in two murders. *Id.* Despite the reduction, the court noted that, "[w]hile this may not reflect the downward departure Judge Sweet contemplated, it is as far as this Court is prepared to go. Notwithstanding Ramirez's dreadful upbringing, his young age when he committed his crimes, and rehabilitation, forty years in prison is as low as this Court will go for this twice murderer." *Id.*

In short, all the above-referenced cases, found youth to be an extraordinary and compelling circumstance when it was combined with various other factors such as upbringing, rehabilitation while incarcerated, medical illnesses, and changes in mandatory sentencing laws. *See Ramsay*, 538 F. Supp. 3d at 426; *Glynn*, 2022 WL 562652 at *6; *Ramirez*, 571 F. Supp. 3d at 52. Here, Cornish relies only on his young age at the time he committed the murder and his alleged vulnerability to COVID-19 to demonstrate an extraordinary and compelling circumstance. Since it has already been determined that Cornish failed to demonstrate a "particularized susceptibility" to COVID-19, it is not enough for Cornish to rely solely on his youth at the time of his underlying crime. The court in *Ramsay* also noted that the petitioner had not "merely become a model inmate; he ha[d] become an exemplary family member, friend, student, and employee." *Ramsay*, 538 F. Supp. 3d at 425. While Cornish has certainly shown completion of various coursework, he does not provide documentation of rehabilitation that amounts to the petitioner in *Ramsay*. (ECF No. 89.) Furthermore, unlike *Ramsay* and *Glynn*, who were both challenging life sentences, Cornish was not sentenced to life. *Ramsay*, 538 F. Supp. 3d at 429; *Glynn*, 2022 WL 562652 at *8. As

such, Cornish has not demonstrated that his youth at the time he committed the murder was an extraordinary and compelling circumstance that warrants a sentence reduction.

### III.     The 18 U.S.C. § 3553(a) Factors Do Not Support Cornish's Early Release.

Finally, Cornish's compassionate release is not consistent with the factors provided in 18 U.S.C. § 3553(a). In *McCoy*, the Fourth Circuit made clear that "not all defendants convicted under § 924(c) should receive new sentences," and that "courts should be empowered to relieve some defendants of those sentences on a case by case basis." 981 F.3d at 286–87. Accordingly, a court must conduct an "individualized assessment" under § 3553(a) to determine a defendant's eligibility for a reduction. *McCoy*, 981 F.3d at 286. These factors require this Court to consider: (1) the defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline range; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants. 18 U.S.C. § 3582(c)(1)(A); 18 U.S.C. § 3553(a); *Bryant*, 2020 WL 2085471 at *4. On balance, the 18 U.S.C. § 3553(a) factors do not support Cornish's early release.

Cornish's sentence was within the recommended sentencing guidelines, reflected the seriousness of the offense, and was and remains necessary to promote just punishment and respect for the law. Cornish pled guilty to the use of a firearm in the commission of a crime of violence, specifically in the murder of Carl Lackl. At the time, Carl Lackl was the sole eyewitness in a murder case, and Cornish was recruited to and ultimately followed through

10

with murdering Lackl in order to prevent him from testifying against another member of the "Bloods" in a murder trial. The sentencing guidelines at the time were between 10 years and a life sentence and given the seriousness of the offense as well as the need to promote respect for the law, including not deterring key witnesses from coming forward in the future, 40 years of incarceration remains an appropriate sentence.

Cornish's rehabilitation thus far is outweighed by the seriousness of the crime. He has filed several documents showing he has rehabilitated while incarcerated including transcripts reflecting satisfactory grades in various courses, serving as a tutor to other inmates, and completing drug abuse programs. (ECF No. 89.) While these achievements are certainly important improvements, the other factors substantially outweigh them and do not support a reduction of his sentence. As referenced when discussing *Ramsay*, an inmate seeking a sentence reduction must be more than just a "model inmate," especially when the crimes are this severe. *Ramsay*, 538 F. Supp. 3d at 425. Accordingly, the 18 U.S.C. § 3553(a) factors weigh heavily against Cornish's early release.

## CONCLUSION

For the reasons stated above, it is hereby **ORDERED** this 7th day of February, 2024, that: Cornish's Motion for Compassionate Release (ECF No. 72) is **DENIED**; and Defendant's Motion for an Order Giving Master Authority Pursuant to Rule 53(c)(1) of the Federal Rules of Civil Procedure (ECF No. 77), Defendant's Motion to Appoint Master (ECF No. 78), and Defendant's Motion to Proceed in Forma Pauperis (ECF No. 87) are **DENIED AS MOOT**.

/s/
Richard D. Bennett
United States Senior District Judge